J-S16045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      :              PENNSYLVANIA
                                                      :
                              v.                      :
                                                      :
                                                      :
                                                      :
CALIL TIMAZEE                                         :
                                                      :
                    Appellant                         :  No. 2576 EDA 2023

Appeal from the PCRA Order Entered September 21, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004012-2017

BEFORE:  STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 31, 2024**

Appellant Calil Timazee appeals the order entered by the Court of Common Pleas of Philadelphia County denying his petition pursuant to the Post Conviction Relief Act (PCRA).[1]  After careful review, we affirm.

Appellant was charged with criminal homicide in connection with the April 24, 2017 shooting death of Boris Kimber, Jr. ("the victim").  On April 22, 2019, on the day his jury trial was set to commence, Appellant chose to plead guilty to third-degree murder and possessing an instrument of crime (PIC).

In doing so, Appellant admitted to the following factual basis for his plea:  on April 24, 2017, at approximately midnight, Appellant was inside his Philadelphia apartment with his girlfriend, Whitney Burrison, as well as the victim, and the victim's girlfriend, Imani Talbert.  Notes of Testimony (N.T.),

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

4/22/19, at 23-24; N.T., 6/17/19, at 3-4. Appellant had allowed the victim and Ms. Talbert to stay at his apartment while they looked for a place to live. N.T., 4/22/19, at 24. The parties began to argue after Appellant informed the victim and Ms. Talbert that they were no longer welcome to stay there due to ongoing problems. N.T., 4/22/19, at 24. In this altercation, the victim made threats against Appellant and Ms. Burrison. N.T., 4/22/19, at 24.

After the victim sat down on a folding chair in the living room and began to smoke a cigarette, Appellant pulled out a firearm and repeatedly shot the unarmed victim nine times. N.T., 4/22/19, at 24-25. Appellant proceeded to call 9-1-1 and told the emergency operator that he had "emptied his clip into [the victim]." N.T., 4/22/19, at 25. When emergency personnel arrived, the victim was pronounced deceased. N.T., 4/22/19, at 25. The victim's autopsy revealed that he sustained nine gunshot wounds; eight bullets were recovered from the victim's body. N.T., 4/22/19, at 24-25.

The responding police officers arrived at the scene to find Appellant in possession of a 40-caliber Glock with an empty magazine. N.T., 4/22/19, at 26. The officers also recovered nine fired cartridge casings at the scene. N.T., 4/22/19, at 25. Subsequent ballistics testing revealed that the nine fired cartridge casings and the eight bullets recovered from the victim's body matched Appellant's firearm. N.T., 4/22/19, at 26-27.

The Commonwealth indicated that it was prepared to proceed to trial with all the physical evidence as well as the testimony of Ms. Talbert, the victim's girlfriend, who would have testified that the Appellant shot the

unarmed victim, "who did not have a gun, a knife, or anything else in his hands or on his person aside from the cigarette at the time he was shot." N.T., 4/22/19, at 25. The Commonwealth would also present testimony of the responding officers who documented in a crime scene video that a cigarette was found on the floor next to the folding chair in the living room. N.T., 4/22/19, at 27.

On June 17, 2019, the trial court imposed a sentence of twenty to forty years' imprisonment for the third-degree murder charge and no further penalty on the PIC charge. On July 8, 2020, this Court affirmed the judgment of sentence. Appellant did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On August 27, 2020, Appellant filed his first PCRA petition. The PCRA court appointed Appellant counsel, who subsequently filed a no-merit letter and a petition to withdraw. On November 12, 2020, the PCRA court gave notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On January 7, 2021, the PCRA court dismissed Appellant's petition and granted counsel's petition to withdraw.

On July 24, 2023, Appellant filed the instant, counseled PCRA petition seeking to withdraw his guilty plea based on his allegations that the investigating officers, Detective James Pitts and Detective Levi Morton, had coerced the witnesses in this case and provided false information that led to his conviction. Appellant asserted that he recently discovered that Detective Pitts had been criminally charged in federal court with multiple counts of

- 3 -

perjury and obstruction of justice and been accused of engaging in coercive tactics when interviewing witnesses. In addition, Appellant alleged that Detective Morton was under investigation for unspecified misconduct. Given that Detective Pitts and Detective Morton had also interviewed the Commonwealth's witnesses that were present in Appellant's apartment at the time of the victim's murder, Appellant suggested that the detectives used similar coercive tactics in this case.

On August 1, 2023, the PCRA court issued its Rule 907 dismissal notice. On September 21, 2023, the PCRA Court dismissed Appellant's instant petition as untimely and meritless. Appellant filed a timely appeal and complied with the PCRA court's direction to file a concise statement or errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for review on appeal:

1. Did the PCRA Court err by denying Appellant's PCRA petition in light of newly discovered evidence provided in the federal case of ***Obina Onyiah v. City of Philadelphia***, ***et al***., establishing Detective Pitts' reputation for habitually coercive conduct towards witnesses during interrogations[?]

2. Did the PCRA Court err by denying Appellant's PCRA petition when it failed to consider, without a hearing, newly discovered evidence of a history of misconduct by Detective James Pitts which was not disclosed by the Commonwealth due to governmental interference[?]

3. Did the PCRA Court err when it failed to consider, without a hearing, as to when the newly discovered evidence of a history of misconduct by Detective James Pitts became known by [A]ppellant[?]

Appellant's Brief, at 2.

- 4 -

As a preliminary matter, it is well-established that "the PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed." **Commonwealth v. Walters**, 135 A.3d 589, 591 (Pa.Super. 2016) (citations omitted). Generally, a PCRA petition "including a second or subsequent petition, shall be filed within one year of the date the judgment of sentence becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review. 42 Pa.C.S.A. § 9545(b)(3).

However, Pennsylvania courts may consider an untimely PCRA petition if the petitioner explicitly pleads and proves one of the three exceptions enumerated in Section 9545(b)(1), which include: (1) the petitioner's inability to raise a claim as a result of governmental interference; (2) the discovery of previously unknown facts or evidence that would have supported a claim; or (3) a newly-recognized constitutional right that has been held to apply retroactively by the Supreme Court of the United States or the Supreme Court of Pennsylvania. 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

As noted above, Appellant was sentenced on June 17, 2019 and this Court affirmed the judgment of sentence on July 8, 2020. As such, the judgment of sentence became final on August 7, 2020, upon the expiration of the thirty-day period to file a petition for allowance of appeal to the Supreme Court. Appellant filed the instant petition in July 2023, nearly three years after his judgment of sentence became final.

While Appellant concedes that his petition is untimely, Appellant asserts that he is entitled to review under two of the PCRA time bar exceptions, arguing that his discovery that Detective Pitts had been criminally charged for misconduct satisfied the newly-discovered fact exception as well as the governmental interference exception.[2] The Commonwealth "does not dispute that former detective Pitts has been accused of misconduct in other cases." Commonwealth's Brief, at 5.

Even assuming that Appellant has met one of these timeliness exceptions, Appellant has not shown that he is entitled to collateral relief. To the extent that Appellant raises an after-discovered evidence claim, Appellant was required to plead and prove by a preponderance of the evidence that "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). As such, a petitioner must show "(1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017) (citation omitted). "The after-discovered evidence doctrine also applies to evidence discovered

---

[2] While Appellant asserted in his PCRA petition that he was entitled to relief based on his allegation that Detective Morton had been under investigation for unspecified reasons, Appellant does not pursue that claim on appeal.

- 6 -

after a guilty plea that meets these four standards." *Commonwealth v. Mach Transp., LLC*, 305 A.3d 22, 27 (Pa.Super. 2023) (citing *Commonwealth v. Peoples*, 319 A.2d 679, 681 (Pa. 1974)).

In *Commonwealth v. Johnson*, 179 A.3d 1105, 1123 (Pa.Super. 2018), this Court determined that the criminal conviction of an investigating detective in the petitioner's case did not constitute after-discovered evidence as it had no bearing on the petitioner's case, would only be used to impeach the detective's credibility, and would not lead to a different result as the petitioner failed to present any evidence that the former detective did anything inappropriate in his case. In *Commonwealth v. Brown*, 134 A.3d 1097, 1109 (Pa.Super. 2016), this Court rejected the petitioner's claim that he was entitled a hearing on his after-discovered evidence claim in which he would call witnesses to testify concerning Detective Pitts' improper interrogation tactics in unrelated cases. As Brown failed to present any evidence that Detective Pitts committed misconduct in his case, Brown's proposed witness testimony could only be used to attack Detective Pitts' credibility, which did not satisfy the after-discovered evidence test.[3]

Similarly, in the instant case, even if Appellant could present evidence of Detective Pitts' misconduct in unrelated cases, Appellant failed to point to

---

[3] *See also Commonwealth v. Foreman*, 55 A.3d 532 (Pa.Super. 2012) (determining that the filing of criminal charges against the investigating detective in the appellant's case in an unrelated matter did not satisfy the after-discovered evidence test since such evidence would be used solely to impeach the detective's credibility and would not likely result in a different verdict if a new trial were granted).

anything in the record that would support his claim of possible police misconduct in *this* case. While Detective Pitts and Detective Morton interviewed the women who were at Appellant's apartment at the time of the victim's murder, there is no evidence that any inappropriate interview tactics were used in this case or that any misconduct occurred. Appellant has not articulated any evidence that he would present to show that misconduct occurred in this case.

The trial court specifically found that:

[w]hile [Appellant] claims that the detectives coerced witnesses, concealed evidence, and fabricated evidence that could have proven that he shot the victim in self-defense, [Appellant] utterly fails to allege what evidence was fabricated or concealed by either detective. He fails to allege what Detective Pitts did in the investigation other than being the lead detective on his case. Detective Pitts did conduct an interview of the only eyewitness to the shooting, [the victim's] paramour Emani Talbert, but Talbert has never recanted her statement or alleged any misconduct by Detective Pitts. Talbert provided a videotaped summary of her statement following her interview with Detective Pitts, and she testified consistently with her statement at [Appellant's] preliminary hearing. N.T. 5/10/17 at 12-58.

Regarding Detective Morton, merely stating that the Commonwealth opened an investigation into Detective Morton nearly three years ago is not a sufficient basis for relief. Detective Morton interviewed [Appellant's] paramour, Whitney Burrison, who witnessed the events surrounding the shooting, but did not witness the shooting itself. [Appellant] fails to allege any misconduct by Detective Morton regarding this interview, and Burrison, who testified on [Appellant's] behalf at his sentencing, has never alleged any misconduct by Detective Morton. Burrison's testimony was consistent with the testimony of Talbert. [Appellant] has not attached any certifications from any witness alleging that the detectives committed misconduct. N.T. 5/10/17 at 78-94.

- 8 -

PCRA Court Opinion, 9/21/23, at 6-7. Appellant is not entitled to an evidentiary hearing to conduct a fishing expedition for possible evidence to support his claim of alleged misconduct in this case. *See Brown*, *supra*.

Moreover, there was sufficient evidence of Appellant's guilt even without the statements that Appellant alleges were coerced. Appellant admitted to the 9-1-1 operator that he had "emptied his clip" into the victim, who sustained nine gunshot wounds. Officers determined that Appellant was in possession of the firearm with an empty magazine that was determined to be the murder weapon. Although Appellant suggests that he could have raised a claim of self-defense, there is no evidence in the record to show that the victim was armed or presented an imminent threat to Appellant. Instead, the crime scene video showed a cigarette on the floor next to the chair where the victim was shot, supporting the Commonwealth's assertion that the unarmed victim was seated and smoking a cigarette at the time of his death.

As such, the trial court correctly dismissed Appellant's after-discovered evidence as he failed to demonstrate that his proffered evidence would be used for anything other than impeachment purposes or that the evidence would lead to a different outcome in this case.

Appellant also argues that he is entitled to collateral relief as he asserts that the Commonwealth's failure to provide him Detective Pitt's police misconduct records was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Our Supreme Court has provided that, in order to establish a *Brady* violation:

a defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Willis*, 46 A.3d 648, 656 (Pa. 2012) (internal citations and quotation marks omitted).

Appellant has failed to show that the evidence of Detective Pitts' misconduct in unrelated cases was material to this case, such that its omission resulted in prejudice to Appellant. As noted above, while Detective Pitts was involved in Appellant's case in taking the statement of the victim's girlfriend, Ms. Talbert, there is no evidence in the record to show any indication that Detective Pitts committed misconduct or any impropriety in this case. Further, there is no reasonable probability that, had the prosecution disclosed evidence of Detective Pitts' misconduct in unrelated cases to the defense, that the outcome in this case would have been different.

Accordingly, as the trial court correctly concluded that Appellant was not entitled to collateral relief on either of his claims, the trial court did not err in dismissing his second PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>5/31/2024</u>